**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

---

TIFFANY HENSLEY,

Plaintiff,

v. No. 1:25-cv-01104-STA-jay

BENTON COUNTY, TENNESSEE;
ET AL.,

Defendants.

---

**REPORT AND RECOMMENDATION**

---

Defendants Benton County, Tennessee, Deputy Sean Beck, Sgt. Averie Hicks, and Sgt. Chris Richards move for partial judgment on the pleadings. (Docket Entry ["D.E."] 40). This case has been referred to the undersigned United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05). For the reasons set forth below, it is recommended that these Defendants' motion for partial judgment on the pleadings be **GRANTED in PART** and **DENIED in PART**.

## BACKGROUND

According to her Second Amended Complaint, on March 28, 2025, Plaintiff Tiffany Hensley reported to Defendant Sergeant Chris Richards that Cody Pierpoint had threatened her life. (2d Am. Compl., D.E. 12 at 2 ¶ 10). She also told Defendant Richards that Pierpoint did not reside at her home. (*Id.*). On March 30, 2025, a 911 call was made from Hensley's home which she describes as an accidental call. (*Id.* at 3 ¶ 11). Defendant Deputy Sean Beck responded to the 911 call, and, upon his arrival, observed Pierpoint sitting in a vehicle outside of Hensley's

residence. (*Id.*). Hensley voluntarily consented to Defendant Beck entering her home and told him that she owned a firearm that was inside the home. (*Id.*).

Later that day, Defendant Beck obtained a search warrant. (*Id.* at ¶ 12). In the affidavit submitted in support of the search warrant, Defendant Beck stated he was informed by an off-duty officer that Pierpoint, who is a convicted felon and prohibited from possessing firearms and ammunition, was recently observed purchasing ammunition. (*See* Ex. 1 to 2d Am. Compl., D.E. 12-1 at 4). Defendant Beck further stated in the affidavit that he had responded to Hensley's 911 call that day, observed Pierpoint exiting the home and then sitting in a vehicle at the property, and observed a firearm hanging on a wall in what he described as Pierpoint and Hensley's bedroom. (*Id.*). Defendant Beck relayed that he had been to Hensley's home on March 28, 2025, following her report that Pierpoint had threatened her with harm and that Pierpoint has violent tendencies based upon him being charged with aggravated assault in the past. (*Id.*). Defendant Beck sought a search warrant to seek evidence of "[a]ny firearms or ammunition prohibited to being owned by Cody Pierpoint." (*Id.* at 1). The search warrant was issued on that same date. (*Id.* at 2).

On March 31, 2025, deputies executed the search warrant. Hensley was held at gunpoint and handcuffed while she was in a state of undress, in front of her minor children. (D.E. 12 at 3 ¶ 14). Defendant Sergeant Avery Hicks was present but did not intervene "to prevent the degrading and traumatic detention." (*Id.* at ¶ 15). During the execution of the search warrant, officers seized a shotgun, ammunition, prescription bottles, and a glass pipe, along with Hensley's vehicle. (*Id.* at ¶ 17). Hensley was arrested and charged in the Benton County General Sessions Court with four counts of drug offenses and one count of aggravated child abuse/neglect/endangerment. (*Id.* at 3-4 ¶¶ 18-19; *see also* Ex. A to Defs.' Motion for Judgment on the Pleadings, D.E. 40-2 at 3-12). No

charges for forfeiture proceedings regarding Hensley's vehicle were filed and the Benton County Sheriff later returned the vehicle to her. (D.E. 12 at4 ¶ 19).

On April 8, 2025, Defendant Beck conducted a traffic stop of Hensley for "following too close." (2d Am. Compl., D.E. 12 at 4 ¶20).[4] Defendant Beck searched Hensley's vehicle without her consent. (*Id.*). Defendant Beck told Hensley that his reasonable suspicion to search her vehicle was based on her "not telling him her whereabouts." (*Id.*). Defendant Richards arrived and deployed a K9 to search Hensley's vehicle. (*Id.*). No contraband was found and Hensley was issued a warning citation for "following too close." (*Id.*).

On April 16, 2025, Hensley pled guilty to possession of drug paraphernalia and child abuse/neglect/endangerment arising from the March 31, 2025, search warrant execution and her arrest. (*See* Ex. A to Defs.' Motion for Judgment on the Pleadings, D.E. 40-2 at 2).

**PROCEDURAL HISTORY**

Hensley, proceeding *pro se*, filed this action on April 24, 2025. (D.E. 1). She sought and received leave to proceed *in forma pauperis* (D.E. 2, 6) and, before the Court screened her complaint, she filed a motion for a preliminary injunction (D.E. 7) and an amended complaint (D.E. 8). The undersigned screened her amended complaint and ordered Hensley to further amend her complaint. (D.E. 11). Hensley then filed a second amended complaint, and the Court directed the Clerk to issue process. (D.E. 12, 13).

In her Second Amended Complaint, Hensley brought claims pursuant to 42 U.S.C. § 1983 against Defendants Benton County, Richards, Beck, and Hicks alleging that she was deprived of her Fourth and Fourteenth Amendment rights. (D.E. 12). Specifically, Hensley alleges that Defendant Beck subjected her to an unlawful search and seizure because the affidavit he presented in support of his search warrant application contained materially false information, searched her

home beyond the scope of the warrant, and seized property without probable cause. (D.E. 12 at 5 ¶¶ 29, 31). She further alleges that Defendant Richards also subjected her to an unlawful search during the April 8, 2025, traffic stop. (*Id*. at ¶¶ 30-31). Next, Hensley contends that Defendant Beck deprived her of property and her parental rights thereby violating her due process rights.[1] (*Id*. at ¶¶ 33-34). Hensley then asserts a *Monell* claim against Benton County alleging that it "failed to train, supervise, and discipline its officers on lawful search, seizure, and warrant procedures" and that these alleged failures "amount to a policy or custom that was the moving force behind the constitutional violations." (D.E. ¶¶ 36-37). Hensley also brings a state law conversion claim against Defendant Beck alleging that during the March 31, 2025, search he seized her personal vehicle and certificate of title, without any authority to do so and did not provide her with any documentation, receipt, or explanation of why her vehicle was seized. (*Id*. at 7-8 ¶¶ 39-44). Finally, Hensley asserts a failure to intervene claim against Defendant Hicks asserting that "Hicks had a duty and opportunity to intervene when [Hensley] was held barely clothed at gunpoint in front of her minor children" and that Hicks's alleged "failure to act caused additional harm and violated [Hensley's] Fourth and Fourteenth Amendment rights." (D.E. at 6-7 ¶¶ 45-47).

Defendants were all served with summonses and copies of the second amended complaint and have filed answers. (D.E. 17, 21). Defendants subsequently filed their motion for partial judgment on the pleadings in which they seek dismissal of all of Hensley's claims except for her claims relating to the April 8, 2025, traffic stop. (*See* D.E. 40). Hensley has filed a response in opposition (D.E. 41), and Defendants have filed a reply. (D.E. 42).

---

[1] Hensley also brought a due process claim against Bethany Walker, a Tennessee Department of Children's Services caseworker. Hensley's claim against Walker has been previously dismissed. (*See* D.E. 45).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Id.* at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## ANALYSIS

Defendants move for partial judgment on the pleadings on several bases. First, they contend that the *Heck* doctrine bars Hensley's search and seizure claims relating to the March 31, 2025, incident. Next, they argue, in the alternative, that Defendant Beck is entitled to qualified immunity with respect to Hensley's claims related to the March 31, 2025, execution of the search warrant and search of her home. Defendant Hicks submits that she is also entitled to qualified immunity regarding Hensley's failure to intervene claim. Defendants then urge the Court to find that Hensley has failed to adequately plead a *Monell* claim against Benton County, and that she also failed to adequately plead a conversion claim against Defendant Beck.

In response, Hensley counters that her Fourth Amendment claims are severable from her convictions and, thus, are not foreclosed by *Heck*. Specifically, she argues that her being held barely clothed at gunpoint is an excessive force/unlawful seizure claim that survives despite her guilty plea and that the unlawful seizure/conversion of her vehicle claim also remains intact. Next, she contends that she has adequately pled a failure to intervene claim against Defendant Hicks. She then argues that her claim for the seizure/conversion of her vehicle is viable because the claim is to be adjudicated under the Fourth Amendment and not the Fourteenth Amendment, there is no exhaustion of state remedies requirement, and the search warrant lacked particularity to support the seizure of the vehicle. Next, Hensley states that she has sufficiently pled a *Monell* claim against Benton County, and, finally, qualified immunity is premature at this stage of the litigation.

In their reply, Defendants note that Hensley has waived much of her Fourth Amendment claim concerning the March 31, 2025, search. They argue that, based upon her reply, the only Fourth Amendment claims she is prosecuting are for her being held at gunpoint barely clothed and for the seizure of her vehicle. Defendants reiterate that *Heck* bars all the Fourth Amendment claims

surrounding the March 31, 2025, search and that the legal authority Hensley cites in her response does not support her argument in opposition. Next, Defendants remind the Court that qualified immunity is appropriate to decide at the pleadings stage and that this Court routinely does so. Next, Defendant Beck reiterates that he is entitled to qualified immunity based upon Hensley's apparent waiver of much of her Fourth Amendment claim. Defendant Beck also points out that the search warrant did describe and include Hensley's vehicle and that vehicles found at the subject location of a search warrant may be impounded. For these reasons, Defendant Beck contends that he is entitled to qualified immunity. Defendant Hicks cites Supreme Court authority that establishes that law enforcement personnel may prevent a suspect from getting dressed during an arrest and that not allowing a suspect to get dressed is not a use of force. Thus, qualified immunity should be granted to Defendant Hicks. Finally, Defendants restate that Hensley has failed to adequately allege a *Monell* or conversion claim.

## I. Preliminary matters

Before evaluating the parties' arguments, the Court must first address two preliminary matters: Defendants' request that the Court take judicial notice of the Benton County General Sessions Court proceedings relating to the March 31, 2025, execution of the search warrant and Hensley's arrest; and Hensley's submission of non-existent legal citations in her reply.

### A. Defendants' request for judicial notice.

Defendants ask the Court to take judicial notice of a Judgment from the Benton County General Sessions Court entered against Hensley (D.E. 40-2 at 1-2) and arrest warrants and affidavits of complaint filed in the Benton County General Sessions Court. (*Id*. at 3-12). Hensley does not object to Defendants' request for judicial notice of those proceedings.

"When reviewing a motion to dismiss, a district court may not consider matters beyond the complaint." *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008) (citing *Kostrzewa v. City of Troy,* 247 F.3d 633, 643 (6th Cir.2001) (further citation omitted)). If the district court considers matters outside of the complaint, the motion to dismiss is effectively converted to a motion for summary judgment. *Id.* (citing *Kostrzewa,* 247 F.3d at 643). However, "[i]n ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Flex Homes, Inc. v. Ritz–Craft Corp. of Mich.,* 721 F.Supp.2d 663, 669 (N.D. Ohio 2010) (citing *Whittiker v. Deutsche Bank Nat'l Trust. Co.,* 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009) (additional citations omitted)); *see New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003).

"A court may judicially notice a fact that is not subject to reasonable dispute because it .... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Court records are a typical subject of judicial notice under Rule 201(b)(2). *See* 21B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5106.4 (2d ed. 2005 & Supp. 2009). Indeed, the Sixth Circuit has held that "federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980) (citation omitted).

While a court may take judicial notice of the existence of court documents and the proceedings in which those documents were generated, federal courts do not generally take judicial notice of the truth of any statement of fact contained within those documents. *See e.g., Embassy*

*Realty Invs., LLC v. City of Cleveland*, 877 F. Supp. 2d 564, 571 (N.D. Ohio 2012). In the context of guilty pleas in criminal proceedings, however, federal courts have found it appropriate to take notice, not only of the fact that the guilty plea was entered, but also of the material facts charged in the indictment as well as facts specifically admitted by the defendant as part of his or her plea. *See In re ClassicStar Mare Lease Litigation*, 823 F.Supp.2d 599, 622-23 (E.D. Ky. Sept. 30, 2011) (finding it appropriate to take judicial notice of guilty pleas and "those facts to which [the defendants] have admitted"); *Great American Ins. Co.*, 2010 WL 845953 at * 18-19 ("The key point is that a guilty plea serves as an admission of the material facts charged in the information or admitted by the Defendant during the plea colloquy...The Court will [therefore] take judicial notice of the records of the criminal action, and the facts specifically admitted by the Plummers in their pleas."). Accordingly, the Court should take judicial notice of the records Defendants have submitted relating to the proceedings against Hensley in the Benton County General Sessions Court.

<u>B.</u> <u>Hensley's citations to non-existent cases.</u>

In their reply, Defendants raise that Hensley's response includes two legal citations that appear to be fictitious or non-existent. (*See* D.E. 42 at 6-7, n. 2). Hensley cites *Fox v. Van Riper*, 5 F.3d 951 (6th Cir. 1993) and *Samply v. Rabb*, No. 3:15-cv-01018, 2017 WL 1170850, (M.D. Tenn. Mar. 28, 2017) (*see* D.E. 41 at 2, 8), both of which Defendants state are non-existent cases. The Court's research confirms Defendants' report about these citations.

"Without question, it is improper and unacceptable for litigants—including *pro se* litigants—to submit 'non-existent judicial opinions with fake quotes and citations.'" *Anonymous v. N.Y.C. Dep't of Educ.*, No. 1:24-cv-04232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024)

(quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)). "Sanctions may be imposed for submitting false and nonexistent legal authority to the Court." *Id.* (citations omitted); *See also* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper ... an attorney *or unrepresented party* certifies ... the claims, defenses, and other legal contentions are warranted by existing law ...." (emphasis added)); *Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr.*, No. 1:24-cv-01918, 2025 WL 2502308, at *3 (S.D. Ind. Sept. 2, 2025) ("Courts have consistently held for decades that failing to check the treatment and soundness—let alone the existence—of a cited case warrants sanctions." (collecting cases)); *Safe Choice, LLC v. City of Cleveland*, No. 1:24-cv-02033, 2025 WL 3029553, at *2 (N.D. Ohio Oct. 30, 2025) ("[C]itation to non-existent authority violates Rule 11 regardless of intent." (citations omitted)). The Court hereby **WARNS** Hensley that it may impose sanctions, up to and including dismissal of this case, if she submits non-existent or fictitious citations in any future filings with the Court.

**II. Hensley's civil rights claims.**

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives a person of a right secured by the Constitution. *Hux v. Williams*, 751 F. Supp. 3d 885, 891 (E.D. Tenn. 2024) (citations omitted). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citation omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (citation omitted).

Hensley alleges deprivations of her Fourth and Fourteenth Amendment rights. For the reasons that follow, the Court should find that the *Heck* doctrine bars her Fourth Amendment claim against Defendant Beck relating to the March 31, 2025, search warrant and execution of that warrant. Next, the Court should find that Hensley has failed to state a claim under the Fourteenth Amendment against Defendant Beck for the seizure of her vehicle and for her temporary loss of custody of her child. The Court should also find that Defendant Beck is not entitled to qualified immunity on Hensley's Fourth Amendment claim relating to the seizure of her vehicle. Similarly, the Court should also find that Defendant Hicks is not entitled to qualified immunity relating to Hensley's "failure to intervene" claim. Finally, the Court should conclude that Hensley has not adequately alleged a *Monell* claim against Benton County.

A. Fourth Amendment claims against Defendant Beck relating to the search of Hensley's home are barred by the *Heck* doctrine.

Hensley alleges Defendant Beck subjected her to an unlawful search on March 31, 2025, because the affidavit he presented in support of his search warrant application contained materially false information, and the search of her home went beyond the scope of the warrant. (D.E. 12 at 5 ¶¶ 29, 31). In light of her guilty plea to possession of drug paraphernalia and child abuse/neglect/endangerment, these claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

"The *Heck* doctrine addresses a common situation." *Chaney-Snell v. Young*, 98 F.4th 699, 707 (6th Cir. 2024). Convicted defendants often sue under § 1983, claiming "that public officials violated the Constitution while investigating or prosecuting" them. *Id. Heck* prevents "the use of § 1983 to challenge the validity of a prior conviction or sentence so as to obtain release from custody or monetary damages." *Olivier v. City of Brandon*, 607 U.S. 552, 556 (2026). If a plaintiff asserts a claim that contradicts an element of an underlying criminal offense, or if that claim could

have been asserted in criminal court as an affirmative defense, *Heck* applies to bar the § 1983 suit. *Hayward v. Cleveland Clinic Found*., 759 F.3d 601, 609 (6th Cir. 2014). So, when a litigant seeking such a remedy brings a lawsuit that "would necessarily imply the invalidity of" the underlying conviction, *Heck* bars the lawsuit unless the plaintiff "can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. That is, the plaintiff must show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.*

Hensley makes no allegation that her convictions for possession of drug paraphernalia and child abuse/neglect/endangerment have in any way been invalidated. Hensley has not shown that either of her convictions have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Accordingly, Hensley's claims against Defendant Beck arising from his obtaining and executing the search warrant, except for the seizure of Hensley's vehicle, at issue in this case are barred by *Heck.*

B. Qualified immunity.

An individual defendant may be immune from suit under § 1983 under certain circumstances. *See Alkire v. Irving*, 330 F.3d 802, 810–11 (6th Cir.2003). "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Benison v. Ross*, 765 F.3d 649, 664 (6th Cir. 2014) (internal quotation marks omitted). If a defendant asserts qualified immunity, the plaintiff bears the burden of showing that (1) considering the allegations in a light most favorable to the party injured, a constitutional right

has been violated, and (2) that right was clearly established at the time of the defendant's conduct. *Benison*, 765 F.3d at 664; *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). The court has discretion over which question to tackle first. *Range v. Douglas*, 763 F.3d 573, 587 (6th Cir. 2014).

In order for a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable officer would understand that what [she] is doing violates that right." *Benison*, 765 F.3d at 664 (quoting *Bell v. Johnson*, 308 F.3d 594, 601–02 (6th Cir. 2002)). "[I]n light of preexisting law[,] the unlawfulness [of the act] must be apparent." *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 853 (6th Cir. 2012). The issue of qualified immunity is essentially a legal question to be determined by the court. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

*1. Defendant Beck*

a. Seizure of Hensley's vehicle.

Defendant Beck submits that he is entitled to qualified immunity as to Hensley's Fourth and Fourteenth Amendment claims based upon the seizure of her vehicle during the execution of the search warrant. The Sixth Circuit has made clear that where property is "seized as part of criminal proceedings," any interest in the property is "protected by the Fourth (not the Fourteenth) Amendment." *Hardiman v. Murdock*, No. 1:24-CV-00230, 2024 WL 5315398, at *8 (E.D. Tenn. Aug. 2, 2024) (quoting *King v. Montgomery Cnty.*, 797 F. App'x 949, 956-57 (6th Cir. 2020)). As the interest here is protected by the Fourth and not the Fourteenth Amendment, Hensley cannot state a claim under the Fourteenth Amendment for the seizure of her vehicle; thus, the question of qualified immunity is moot, and this claim should be dismissed.

Turning to the Fourth Amendment, the Court should find that Defendant Beck is not entitled to qualified immunity at this stage of the proceedings. "Items seized during the execution of a search warrant must be described within the search warrant to prevent officers seizing one thing when the search warrant described another in violation of the Fourth Amendment." *Marcilis*

*v. Redford Twp.*, 757 F. Supp. 2d 663, 676 (E.D. Mich. 2010). However, items not described in the search warrant may be seized if they "reasonably related to the offense which formed the basis for the search warrant." *Id*. (quoting *United States v. Brown,* 49 F.3d 1162, 1169 (6th Cir.1995)).

Here, the offense that formed the basis of the search warrant was Cody Pierpoint's alleged unlawful possession of a firearm as a convicted felon in violation of Tennessee Code Annotated § 39-17-1307. (D.E. 12-1 at 1). The search warrant authorized officers to seize "[a]ny firearms or ammunition prohibited to being owned by Cody Pierpoint." (*Id.*) The search warrant did not authorize the seizure of Hensley's vehicle. Furthermore, based solely on the pleadings and without any evidence, the Court cannot conclude that the vehicle was reasonably related to whether Cody Pierpoint unlawfully possessed firearms or ammunition to an extent that would give rise to the vehicle being seized. If the question before the Court was whether Defendant Beck is entitled to qualified immunity for *searching* the vehicle for firearms or ammunition, the answer would clearly be "yes." However, the same cannot be said for Defendant Beck's *seizure* of the vehicle.

Hensley has sufficiently pled a Fourth Amendment violation concerning the seizure of her vehicle, and it was clearly established at the time of the seizure that officers may not seize items not authorized by a search warrant unless the seized item is reasonably related to the offense giving rise to the search warrant. Because there appears to be no basis for the seizure of the vehicle, the undersigned finds that Defendant Beck is not entitled to qualified immunity on this ground.

b. "Parental custody" seizure.

Hensley also alleges that "Defendants Beck and Wilson deprived Plaintiff of property and parental custody without notice, a court order, or due process of law." (D.E. 12 at 5 ¶ 33). There are no factual allegations concerning the temporary removal of Hensley's child from her custody relating to Defendant Beck, and the claims that were brought against Defendant Bethany Wilson

have been dismissed. (*See* D.E. 45). Because there appears to be no due process claim against Defendant Beck concerning the custody of Hensley's child, a qualified immunity analysis on this basis is unnecessary.

2. *Defendant Hicks*

Hensley asserts a failure to intervene claim against Defendant Hicks on the basis that "Hicks had a duty and opportunity to intervene when [Hensley] was held barely clothed at gunpoint in front of her minor children." and that Hicks's alleged "failure to act caused additional harm and violated [Hensley's] Fourth and Fourteenth Amendment rights." (D.E. at 7 ¶ 46). Hensley frames her failure to intervene claim against Defendant Hicks in both the Fourth and Fourteenth Amendments. (*Id.* at ¶ 47). "The relevant case law pertaining to forced nudity in the context of a law enforcement seizure analyzes such a claim under the Fourth Amendment." *Quick v. Hall*, No. 2:18-CV-1547, 2020 WL 1164773, at *10 (S.D. Ohio Mar. 11, 2020) (citing *L.A. Cty. v. Rettele*, 550 U.S. 609, 615 (2007); (*Hall v. Shipley*, 932 F.2d 1147, 1150 (6th Cir. 1991)). Hensley offers no case law indicating that such a claim can be brought under the Fourteenth Amendment's Due Process Clause. Even assuming that there existed a due process right in this context, such a right is not clearly established, and Defendant Hicks would be entitled to qualified immunity on a Fourteenth Amendment claim. Thus, Hensley's failure to intervene claim must be analyzed under the Fourth Amendment.

In their memorandum of law in support of their motion, Defendants state that "[t]he Fourth Amendment only recognizes a failure to intervene claim in one context – the use of excessive force." (D.E. 40-1 at 13). This is an incorrect statement of the law. The United States District Court for the Eastern District of Tennessee has addressed this issue:

> Though failure-to-intervene claims typically involve allegations of excessive force, the Sixth Circuit has held that this theory of liability extends beyond the excessive-

> force context. *See, e.g., Jacobs v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001) ("[O]fficers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights.") (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982)); *Smith v. Heath*, 691 F.2d 220, 225 (6th Cir. 1982) (noting in the context of an unreasonable search that "[e]ven nonsupervisory officers who are present at the scene of a violation of another's civil rights and who fail to stop the violation can be liable under section 1983") (citations omitted); *Bunkley v. City of Detroit*, 902 F.3d 552, 566 (6th Cir. 2018) (holding that an officer had a duty to prevent an unlawful arrest).

*Johnson v. Hamilton Cnty. Gov't*, No. 1:19-CV-304, 2023 WL 11979766, at *14 (E.D. Tenn. Mar. 29, 2023); *see also Holloran v. Duncan*, 92 F. Supp. 3d 774, 794-95 (W.D. Tenn. 2015), *amended*, No. 13-1050, 2015 WL 12434364 (W.D. Tenn. Apr. 23, 2015) (citing cases in which failure to intervene theories of liability are applied in non-excessive force claims). Therefore, as a matter of law, Hensley may assert a claim against Defendant Hicks based upon Hicks's alleged failure to intervene while Hensley was undressed during the March 31, 2025, search.

To establish a claim for liability for an officer's failure to intervene in another officer's unconstitutional search or seizure, the plaintiff must establish that "(1) the officer observed or had reason to know that an unconstitutional search or seizure was taking place, and (2) the officer had both the opportunity and the means to prevent the search or seizure from occurring." *Moreno v. Lindblade*, No. 20-13292, 2022 WL 16836334, at *10 (E.D. Mich. Nov. 9, 2022) (citations omitted). Hensley pleads that "[Defendant] Hicks was present [during the search] and failed to intervene, despite having clear opportunity to prevent the degrading and traumatic detention." (D.E. 12 at 3 ¶ 15). Therefore, she has alleged the second required element of a failure to intervene claim. The Court must then determine whether her allegation of being handcuffed while in a state of undress might rise to a level of being an unconstitutional search or seizure to support a failure to intervene claim.

Defendants submit that "it is not unlawful for officers to detain a naked occupant with weapons drawn while executing a search warrant." (D.E. 40-1 at 14). Again, this is not an entirely accurate statement of law. In contrast to Defendants' representation to the Court, "in the context of a law enforcement seizure, the Fourth Amendment prohibits forced nudity for any longer than is necessary under the circumstances." *Quick v. Hall*, No. 2:18-CV-1547, 2020 WL 1164773, at *10 (S.D. Ohio Mar. 11, 2020). "[C]ourts have found that forcing detainees to remain unclothed and exposed for longer than necessary to achieve a legitimate law enforcement purpose may cause an otherwise valid detention related to a search warrant to violate the Fourth Amendment." *Sumlin v. Mt. Morris Twp.*, No. 21-CV-10597, 2023 WL 8411243, at *3 (E.D. Mich. Mar. 22, 2023).

The Sixth Circuit first addressed this issue in *Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In *Hall*, officers forcefully entered a home to execute a search warrant and found the plaintiff to be in a state of undress. *Id.* at 1148–49. The search lasted approximately twenty to thirty minutes, and although the length of time during which the plaintiff was nude was disputed, the plaintiff claimed that he was denied the ability to put on any clothes during the search. *Id.* at 1149, 1153. The Sixth Circuit concluded: "[A] reasonable officer in appellant officers' position would have known that requiring an individual to sit naked while exposed to the cold January air would violate such individual's 'clearly established' rights." *Id.* at 1154.

In *Los Angeles Cty. v. Rettele*, 550 U.S. 609 (2007), the Supreme Court upheld a finding that a seizure was reasonable where officers found two occupants naked in bed and held them at gunpoint for several minutes before allowing them to dress. *Id*. at 615-16. Defendants cite *Rettele* for the proposition that officers may "take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search," *id*. at 614, and, therefore, detaining undressed suspects does not amount to a Constitutional violation. The *Rettele* Court, however, did not give

officers carte blanche to detain people in a state of undress beyond what is necessary to secure the premises and ensure officer safety during a search. That Court cautioned "[t]his is not to say, of course, that the deputies were free to force [plaintiffs] to remain motionless and standing for any longer than necessary. We have recognized that 'special circumstances, or possibly a prolonged detention,' might render a search unreasonable." *Id*. at 615. "Indeed, *Rettele* is clear on this point: officers are not free to prevent exposed, unclothed occupants 'from dressing any longer than necessary to protect their safety.'" *Sumlin*, 2023 WL 8411243, at *3 (quoting *Rettele*, 500 U.S. at 615).

Defendants seek to draw a distinction from *Rettele* by pointing out that "[Hensley] was not completely naked when she exited her bedroom. In fact, [Hensley] does not claim that any part of her was completely exposed during the search." (D.E. 40-1 at 14). This is a distinction without a difference. In *Sumlin*, officers executed a search warrant on the wrong house and, upon entering the home, handcuffed the plaintiff "who was dressed only in her underwear, and took her outside where she remained for approximately forty-five minutes." *Id*. at *1. In denying the defendant officer qualified immunity, the Eastern District of Michigan held "[i]f [plaintiff], handcuffed and in her underwear, remained that way longer than was necessary to protect officer safety during the execution of the search warrant, which is a question of fact for the jury, then the detaining officers violated her clearly established Fourth Amendment rights." *Id*. at *3.

Similarly, in *Thornton v. Fray*, 429 F. App'x 504 (6th Cir. 2011), another case Defendants rely upon which appears to be inapposite to their position, officers executed a search warrant on the plaintiff's residence and handcuffed her while conducting their search. *Id*. at 507. The *Thornton* plaintiff:

> was dressed in a nightgown and was not wearing underwear. She claimed that she was handcuffed and forced to remain seated on the floor with the lower part of her

> body fully exposed while the officers secured the residence, and that she was not allowed to dress or cover herself until the search was complete.

*Id*. The Sixth Circuit affirmed the district court's denial of qualified immunity to the defendant officers who were present in the room with the plaintiff when she asked to get dressed. *Id*. at 510 ("given the length of time [plaintiff] was allegedly forced to remain exposed to the officers and to her children, the defendants concede that the officers may have prevented her from getting dressed longer than necessary to protect their safety.").

*Hall, Sumlin,* and *Thornton* are not outlier decisions. The Sixth Circuit, as well as other circuits, is replete with cases in which officers have been denied qualified immunity or summary judgment in circumstances where a suspect was forced to remain nude or undressed for a greater period than necessary to ensure officer safety. *See e.g., Quick v. Hall*, 2020 WL 1164773, at *10-11 (S.D. Ohio March 11, 2020); *Thompson v. City of Detroit*, No. 16-14095, 2018 WL 2020996, at *7 (E.D. Mich. May 1, 2018); *Chaney v. City of Framingham*, No. 18-10413, 2019 WL 6496842, at *4–5 (D. Mass. Dec. 3, 2019); *Spencer v. District of Columbia*, 168 F. Supp. 3d 114, 120 (D.D.C. 2016); *Brown v. City of New York*, No. 11 Civ. 1068 (AJN), 2013 WL 491926, at *6–7 (S.D.N.Y. Feb. 8, 2013); *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 541 (S.D.W.V. 2010). Based upon this line of cases, "there exists a clearly established right not to be detained by law enforcement in a state of undress any longer than is necessary under the circumstances." *Quick*, 2020 WL 1164773, at *11. As Hensley's failure to intervene claim against Defendant Hicks involves a clearly established right, and she has adequately pled her claim, the Court should deny Defendant Hicks qualified immunity.

### C. Hensley has not adequately alleged a *Monell* claim.

Hensley alleges Benton County "failed to train, supervise, and discipline its officers on lawful search, seizure, and warrant procedures" and that these alleged failures "amount to a policy

or custom that was the moving force behind the constitutional violations." (D.E. ¶¶ 36-37). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Weatherholt v. Crockett Cnty. Sch. Bd.,* 797 F. Supp. 3d 836, 846 (W.D. Tenn. 2025) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). "To show 'deliberate indifference' under this theory, a plaintiff must 'show prior instances of unconstitutional conduct demonstrating that the [entity] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id*. (quoting *Griham v. City of Memphis*, Case No. 2:21-cv-02506, 2022 WL 989175, at *2 (W.D. Tenn. Mar. 31, 2022)). A single incident may also give rise to liability if "accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.*

Hensley has failed to plead how Benton County's training or supervision was inadequate, how that alleged inadequacy in training or supervision was the result of Benton County's deliberate indifference, or how that alleged inadequacy caused her alleged Constitutional deprivations. A mere recitation of the required elements for success on a failure to train or failure to supervise theory is insufficient to meet the *Twombly* and *Iqbal* pleading standards. *Weatherholt*, 797 F. Supp. 3d at 846 (citing *Iqbal*, 556 U.S. at 678). The claim for failure to train and supervise thus fails.

Similarly, for Hensley to adequately state a claim against Benton County for "failure to discipline" or that the County follows a "custom of tolerance" or inaction toward constitutional harm, the Sixth Circuit "require[s] plaintiffs to show (1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's

tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015); *see Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). The Sixth Circuit affirmed lower courts' decisions to grant motions to dismiss in similar cases where the plaintiff "has only his experience on which to rely" and does not allege "similar incidents" involving others. *Shorts v. Bartholomew*, 255 F. App'x 46, 58 (6th Cir. 2007); *see, e.g., Garretson v. City of Madison Heights*, 407 F.3d 789, 795–96 (6th Cir. 2005) ("But we have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff.")

Hensley's failure to discipline or custom of tolerance claim appears to be based on actions of the officers that she alleges occurred on March 31, 2025. Her Second Amended Complaint is devoid of any factual allegations supported by any widespread unconstitutional custom or describing any other instances of constitutionally inadequate notice being provided to anyone else. Thus, the *Monell* claim based on failure to discipline fails and must be dismissed

**III. Hensley's state law conversion claim.**

Finally, Hensley asserts a state law conversion claim against Defendant Beck. "Conversion is the appropriation of a thing to a defendant's own use and benefit, in defiance of the plaintiff's right." *Holzemer v. City of Memphis*, No. 06-2436, 2008 WL 8954888, at *25 (W.D. Tenn. Dec. 31, 2008). To state a claim for conversion under Tennessee law, a plaintiff must allege that the defendant has: (1) appropriated something belonging to the plaintiff to his use and benefit; (2) by exercise of dominion over it; (3) in defiance of the plaintiff's right. *Id.* (citing *Mammoth Cave Credit Ass'n v. Oldham,* 569 S.W. 2d 833, 836 (Tenn.Ct.App.1977)). Here, Hensley makes no allegation that Defendant Beck appropriated her vehicle "for his use and benefit." *See id*. This failure to plead a necessary element of a conversion claim is fatal and Hensley's conversion claim

should be dismissed. *See Ivey v. Hamlin,* No. M2001-01310-COA-R3-CV, 2002 WL 1254444, at *4 (Tenn.Ct.App.2002) (unpublished) (finding that summary judgment should have been granted against a plaintiff claiming conversion where the plaintiff had not demonstrated that the deputy sheriff who seized the plaintiff's property had appropriated the property to his own use).

**RECOMMENDATION**

For these reasons, it is recommended that Defendants' motion for partial judgment on the pleadings (D.E. 40) be **GRANTED in PART** and **DENIED in PART**. In summary, the Court should **GRANT** judgment on the pleadings with regard to:

- the Fourth Amendment claim against Defendant Beck arising from the execution of the search warrant on March 31, 2025;
- the Fourteenth Amendment claim against Defendant Beck arising from his seizure of Hensley's vehicle on March 31, 2025;
- the Fourteenth Amendment claim against Defendant Beck arising from Hensley's temporary loss of custody of her child;
- the Fourteenth Amendment claim against Defendant Hicks arising from Hensley not being permitted to dress during the execution of the March 31, 2025, search warrant.
- the *Monell* claim against Defendant Benton County; and
- the state law conversion claim against Defendant Beck.

The Court should **DENY** judgment on the pleadings and find that qualified immunity is not warranted at this stage of the litigation with regard to:

- the Fourth Amendment claim against Defendant Beck arising from the March 31, 2025, seizure of Hensley's vehicle; and

- the Fourth Amendment claim against Defendant Hicks arising from Hensley not being permitted to dress during the execution of the March 31, 2025, search warrant.

If the Court adopts this report and recommendation, the remaining claims will be those arising from Hensley's April 8, 2025, traffic stop against Defendants Beck and Richards which were not raised in Defendants' motion for judgment on the pleadings, and the Fourth Amendment claims against Defendants Beck and Hicks as discussed above.

Respectfully submitted, this the 17th day of August, 2026.

s/Jon A. York
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATIONS. SEE 28 U.S.C. § 636(b)(1); LOCAL RULE 72.1(g)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**